Dear Doctor Deas:
This office is in receipt of the resolution of the Directors of Claiborne Parish Hospital Service District No. 2 to seek an opinion from the Attorney General in regard to the legality of transferring the management, control, and/or ownership of the Homer Memorial Hospital from the Town of Homer to a parish-wide hospital service district. You indicate the Homer Memorial Hospital is owned and located in the Town of Homer, and managed by a seventeen person Board of Directors.
There are currently three hospital service districts in Claiborne Parish. Hospital Service District No. 1 is comprised of Wards 2 and 3 of Claiborne Parish, which operated an acute care hospital in Haynesville until it ceased operations in 1991, and is now used to house the geriatric psychiatric unit, home health service and other health care services pursuant to a lease agreement between the District 1 and the Hospital. The ten mil ad valorem tax approved for the Haynesville facility has not been assessed since the facility ceased operation as an acute care hospital.
Claiborne Parish Hospital Service District No. 2 is comprised of the wards which are not part of District 1 and was created when the officials of the Town of Homer and the Hospital administration recognized a critical need for taxpayer support of the Hospital. A ten mil ad valorem tax supporting the Hospital was approved in 1989 and will expire Sept. 16, 1999.
The Hospital of Homer serves the health care needs of all residents of Claiborne Parish with over one-third of the patients and employees living in District 1, and only two of the seven practicing physicians on the staff are residents of Homer. For this reason the Hospital Board recommended to the governing authority of the Town of Homer and the Parish Police Jury that a single hospital service district for all of Claiborne Parish be created to support all publicly-owned health care facilities in the Parish.
Consequently, Claiborne Parish Hospital Service District No. 3, including all of Claiborne Parish, was created by Act 934 of 1995 and is governed by a nine-member Board of Commissioners. District 3 does not currently own or operate any health care facilities.
Representatives of District 1, District 2, District 3, the current Hospital Board and the governing authority of the Town of Homer have met to address the issue of transferring management and governance of the Homer Hospital. Several issues have arisen from these discussions on which a legal opinion is sought. The issues are as follows:
 1. Is Act 683 of 1997 which exempts certain conveyances of immovable property by hospital service districts from public bid requirements applicable to District 1, which no longer operates a hospital with any licensed beds?
 2. If Act 683 is not applicable to District 1, would the sale of the Haynesville Facility by District 1 to a private for-profit or not-for-profit entity require approval by public referendum of the voters of District 1?
 3. Would a sale of the Hospital by the Town of Homer to a private for-profit or not-for-profit entity require approval by public referendum?
 4. If a sale of the Hospital to a private entity would require approval by public referendum, would such a sale have to be approved by all voters of District 2, which financially supports the Hospital through an ad valorem tax, or only those residents of District 2 who reside in the Town of Homer?
 5. Would a sale of the Hospital by the Town of Homer to a private for-profit or not-for-profit entity be subject to prior review and approval by the Attorney General under the provisions of Act 1371 of 1997?
 6. If a sale of the Hospital to a private entity would be subject to Act 1371, would the proceeds of the transaction have to be used for "appropriate health care purposes" as provided by Act 1371?
 7. If the proceeds of a sale of the Hospital to a private entity would have to be used for health care purposes as provided in Act 1371, would such standard be satisfied if the proceeds were placed in the Town of Homer general fund and used for Town functions such as road maintenance or to servicing existing Town debt?
 8. If the standards of Act 1371 would not be satisfied by placing the proceeds of a sale of the Hospital in the Town of Homer general fund and using such proceeds for general Town functions, what kind of activity would satisfy the standards of Act 1371, i.e. what would be an example of an appropriate use of the proceeds consistent with Act 1371?
 9. May District 1, District 2, District 3, and the Town of Homer enter into a cooperative endeavor agreement in the form of attached Exhibit "C" pursuant to which management and governance of the operations of the Hospital and the Haynesville Facility, but not ownership of the physical facilities, would be transferred at no cost by the Town of Homer and District 1, respectively, to District 3?
 10. Would a cooperative endeavor agreement in the form of attached Exhibit "C" require approval by public referendum, or are District 1, District 2 and the Town of Homer authorized under the laws governing hospital service districts, R.S. 46:1052 et seq, to transfer management and governance of the operations of the Hospital and the Haynesville Facility, but not ownership of the physical facilities to District 3?
Your first two questions are in regard to sale by District 1 of the hospital in Haynesville, and the applicability of Act 683 of 1997 to a sale.
Act 683 of 1997 was to amend and reenact R.S. 46:1074 "to authorize the hospital service district commission to sell and convey certain immovable property" and "to provide for certain requirements prior to the sale and conveyance". Therein it is provided a hospital service district may sell and convey immovable property to any person if the fair market value as determined by an appraisal does not exceed the amounts set forth in the statute for various size facilities. Significantly, along with certain other requirements, it is provided in Section B(5) (a) that "a sale and conveyance conducted under the provisions of this Subsection shall not require a public referendum or public advertisement", and provides in B(5) (b) that "a sale and conveyance conducted under the provisions of this Subsection shall not be subject to any public bid law". There is the requirement that prior to the sale the hospital service district commission adopt a resolution declaring the immovable property sought to be sold is unnecessary for the operations of such hospital service district.
We would conclude although District 1 no longer operates a hospital with licensed beds that Act 683 of 1997 is applicable to District 1, and that the exemption from the requirement for public bid is also applicable. The statute states that "licensed bed capacity" as used therein means the number of beds authorized for the hospital under licensing by the Department of Health and Hospitals, which we would take to mean the license at the time the hospital was operating as an acute care hospital prior to 1991. We find support for this conclusion in the requirement of a declaration that the property to be sold is unnecessary for the operation of the district, and the fair market value refers to the specified amount for a hospital service district owning "or" operating a hospital within the specified bed capacity. This does not indicate is must be operating the hospital since in the disjunctive.
However, in regard to this question we find it pertinent to refer to Atty. Gen. Op. No. 96-402 which was in regard to sale of surplus land owned by the St. Helena Parish Hospital Service District #1. The land was purchased for construction of an assisted living center for the elderly and disabled, but to comply with federal regulations the center would be constructed and owned by a non-profit corporation instead of the District. This office concluded in accordance with Alexis v. Kare-Sue, Inc,187 So.2d 476 (La.App 1966), and Atty. Gen. Op. No. 74-1304 which relied upon the Alexis case, that the District, as a duly constituted political subdivision of the State, with "all the powers of a corporation", had authority to sell surplus immovable property for fair market value at private sale, and in order to establish the fair market value there should be obtained appropriate appraisal of the land. Also, Atty. Gen. Op. No. 97-7 found that the hospital district as an independent political subdivision has authority to sell its surplus real property at private sale, and may sell surplus immovable property to a physician for a medical facility, but if the property is revenue-producing, an election must authorize said sale.
Your questions 3, 4, 5, 6, 7, and 8 concern sale of the Homer Hospital by the Town, the requirement for public referendum, and the applicability of provisions of Act 1371 of 1997.
With reliance upon R.S. 33:4161 and 33:4341 this office concluded in Atty. Gen. Op. 94-443 that the Bossier City General Hospital fell within the definition of a "revenue producing public utility", and, as such, the sale or lease thereof by the governing authority must be authorized by a vote of a majority of the qualified electors at an election held for that purpose, and in accordance with R.S. 33:4341-4348 for consummation of the transaction.
This conclusion that the sale must be authorized by a majority of the electorate is applicable in answer to your third question, and with regard to your fourth question, we feel the voter approval would have to be by all voters of District 2 which financially support the Hospital through an ad valorem tax.
You have informed us that the District 2 was created when the officials of the Town of Homer and the Hospital administration recognized the critical need for taxpayer support of the Hospital, and under such circumstances we find the intent of the law would require a referendum by the entire district rather than just electors of the Town of Homer. Those that are taxed should have a voice in the determination of approval of a sale.
Pursuant to Act 1371, R.S. 40:2100 through 2115 was redesignated as Subpart A of Part II of Chapter 11 of Title 40, and Subpart B of Part II of Title 40 was enacted to comprise R.S. 40:2115.11
through 2115.22 relative to hospitals, and to authorize the attorney general to review and approve or disapprove the acquisition of certain hospitals, and to provide the criteria for such review.
Therein R.S. 40:2115.11 mandates that "no not for profit hospital shall be acquired by any person unless and until the acquisition is reviewed and approved by the attorney general." R.S.40:2115.12 defines "acquisition" as any acquisition by a person "in a not for profit hospital."
Accordingly, we would conclude a sale of the Homer Hospital would require the approval of the Attorney General when the acquisition is for a "not-for-profit" hospital. We note that the statute recognizes that the state "has a responsibility to protect the public interest in nonprofit hospitals by making certain that the charitable assets of those hospitals are managed prudently."
Consistent with this concept is the portion of R.S. 40:2115.17
that states "an acquisition is not in the public interest unless appropriate steps have been taken to safeguard the value of charitable assets and ensure that any proceeds of the transaction are used for appropriate health care purposes as provided for in R.S. 40:2115.18." Consequently, a sale subject to Act 1371 requires that the proceeds of the transaction be used for "appropriate health care purposes as provided in R.S.40:2115.18."
In answer to your seventh question, we do not see how having the proceeds placed in the general fund of the Town of Homer and used for such costs as road maintenance or Town debt could fall within the requirement that proceeds be for "health care purposes."
As to your question of what kind of activity would satisfy the requirement of "appropriate health care", and your request for an example, we see that R.S. 40:2115.18 requires the Attorney General to consider whether the acquisition affects "the continued existence of accessible, affordable health care facilities", and whether the purchaser has made a commitment "to provide health care to the disadvantaged, the uninsured, and the underinsured and to provide benefits to the affected community to promote improved health care." Obviously, a clinic dedicated to health care of low income elderly would be one example of an appropriate use of the proceeds, but "appropriate health care" to provide "benefits to the affected community to promote improved health care" is broad in its coverage, and one example seems meaningless.
Your last two questions pertain to legality of District 1, District 2, District 3, and the Town of Homer entering into a cooperative endeavor agreement whereby management and governance of the operation of the Hospital and the Haynesville Facility would be transferred by the Town of Homer and District 1 to District 3, but not ownership of the physical facilities.
In Atty. Gen. Op. 96-261 this office recognized a cooperative endeavor of a hospital district outside of its boundaries with another entity for the provision of such services in an area served by that entity, when the cooperative endeavor results in the availability of needed services to the residents of the district entering into the agreement. It was noted that such a situation may arise where neighboring hospital service districts cooperate to purchase expensive medical equipment which could not be efficiently utilized by either district alone, but could be economically justified with patients from both facilities utilizing the equipment. This reasoning seems consistent with the cooperative endeavor anticipated in your inquiry.
Similarly, in Atty. Gen. Op. No. 96-117 this office was asked whether a board could be authorized to administer a facility located within the territorial limits of a neighboring municipality with the consent of that municipality. This office recognized the constitution and statutory laws of this state grant political subdivisions the authority to enter into cooperative endeavor arrangements, and saw no reason why the board, acting on behalf of the municipal governing authority, could not enter into a cooperative agreement for the administration of facilities in other municipalities, citing R.S.46:1077.
We find nothing which would prohibit the cooperative agreement in question, nor do we find a requirement of approval by public referendum inasmuch as there would be no transfer of title but only an agreement relative to management and governance of the operation of the facilities.
However, inasmuch as your request is broad on the subject of the legality of a sale, joint venture or cooperative endeavor by the hospital service districts in Claiborne Parish, we are attaching an opinion of this office that extensively discusses issues and law pertinent to your inquiry which we feel may be of assistance, Atty. Gen. Op. 96-350.
We hope this sufficiently answers your inquiry, but if we can be of further assistance, do not hesitate to contact us.
Sincerely yours,
 RICHARD P. IEYOUB Attorney General
 By: ______________________________ BARBARA B. RUTLEDGE Assistant Attorney General
BBR
Date Received: June 16, 1998
Date Released:
BARBARA B. RUTLEDGEAssistant Attorney General